

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

————————————————

No. 02-21-00144-CV

————————————————

RONALD STARKEY, Appellant

V.

JAMES STAINTON,[1] DISTRICT ATTORNEY OF WISE COUNTY, TEXAS,
Appellee

———————————————————————————

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CV20-10-827

———————————————————————————

Before Sudderth, C.J.; Kerr and Bassel, JJ.
Memorandum Opinion by Chief Justice Sudderth

---

[1]Greg Lowery was originally named as the appellee, but he is no longer the District Attorney for Wise and Jack Counties; James Stainton now occupies that office. *See The Honorable James Stainton (R)*, Tex. State Directory (March 4, 2021), https://www.txdirectory.com/online/person/?id=34134&office=23423. Because Lowery was a party to this suit in his official capacity and has "cease[d] to hold office before the appeal or original proceeding [has been] finally disposed of," Stainton is automatically substituted as a party. Tex. R. App. P. 7.2(a).

## MEMORANDUM OPINION

Appellant Ronald Starkey challenges the trial court's denial of his mandamus petition, in which Starkey sought to compel Appellee, the Wise and Jack County District Attorney's Office,[2] to produce documents under the Public Information Act (PIA). *See* Tex. Gov't Code Ann. §§ 552.001–.376. The documents Starkey seeks pertain to the investigation of his prior felony conviction, for which Starkey is currently incarcerated. Starkey contends that he is entitled to the investigative documents under the PIA and related Family Code provisions, and that if he is not, the PIA violates his federal due process rights. We disagree and will affirm.

## I. Background

In 2018, Starkey was convicted of aggravated sexual assault of a child and sentenced to 50 years' confinement. *Starkey v. State*, No. 02-18-00192-CR, 2019 WL 3819505, at *1, *14 (Tex. App.—Fort Worth Aug. 15, 2019, pet. ref'd) (mem. op., not designated for publication) (affirming conviction). His offense and trial occurred in Jack County. *Id.* at *1.

On June 9, 2020, Starkey's attorney submitted a PIA request to the Wise and Jack County District Attorney's Office (DAO) seeking the "records and documents that were gathered regarding the investigation of [Starkey's] case, in particular but not

---

[2]The Wise County District Attorney is also the District Attorney for Jack County. *See* Tex. Gov't Code Ann. §§ 24.448, 43.174.

limited to, all information assembled by [I]nvestigator Robert Pawley, including his reports, notes[,] and interviews." Starkey's attorney claimed the information was necessary to review Starkey's conviction and collaterally challenge it via an application for writ of habeas corpus.

On July 1, 2020, the DAO sought an opinion from the Texas Attorney General's Office (AG) as to whether the information Starkey had requested was "excepted [from disclosure] under Texas Family Code [S]ection 261.201(a) since the records contain details of child abuse or child neglect."[3]  *See* Tex. Fam. Code Ann. § 261.201(a). However, because the DAO did not seek this AG opinion within ten business days of Starkey's PIA request, this tardiness triggered the statutory presumption that the information Starkey had requested was "subject to required public disclosure and must be released unless there is a compelling reason to withhold the information."  Tex. Gov't Code Ann. §§ 552.301(b), .302.

The AG responded with an opinion.[4]  Tex. Att'y Gen. OR2020-21453.  It noted the DAO's untimeliness, but it concluded that "because [S]ection 552.101 of the

---

[3]The DAO provided the AG with a copy of the relevant documents.  *See* Tex. Att'y Gen. OR2020-21453.  These documents are not included in the appellate record.

[4]The AG's opinion refers to its response as a "ruling," Tex. Att'y Gen. OR2020-21453, the Government Code refers to such responses as "decision[s]," Tex. Gov't Code Ann. § 552.301(a), (b), (d), (e), (f), (g), and the case law commonly refers to such responses as "opinion[s]," *see, e.g., City of Hous. v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 585 (Tex. 2018); *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 57 n.7 (Tex. 2015); *Simmons v. Kuzmich*, 166 S.W.3d 342, 345–50 (Tex. App.—Fort Worth 2005, no

3

Government Code can provide a compelling reason to overcome the presumption of openness," the DAO "must withhold the submitted information pursuant to [S]ection 552.101 of the Government Code in conjunction with [S]ection 261.201 of the Family Code." *Id.* The DAO sent Starkey's attorney a copy of the AG's opinion and withheld Starkey's requested documents.

Starkey responded by filing a petition for writ of mandamus. *See* Tex. Gov't Code Ann. § 552.321. In his petition, Starkey claimed that (1) the DAO waived its right to withhold the documents by failing to timely request an AG opinion,[5] (2) Starkey was entitled to disclosure under the PIA, and (3) if he was not entitled to disclosure under the PIA, then such nondisclosure violated his due process rights.[6] Starkey then moved for summary judgment on the latter two arguments, adding to them the contention that the trial court should order disclosure under the discretionary disclosure procedures that accompany the Family Code PIA exception relied upon by the DAO. *See* Tex. Fam. Code Ann. § 261.201(b), (c). The trial court issued an order denying Starkey's mandamus petition without a hearing.

---

pet.). We use the term "opinion" but note that all three terms are interchangeable in this context.

[5]On appeal, Starkey acknowledges that despite the DAO's untimeliness, the DAO could withhold the requested information for a "compelling reason."

[6]Starkey's petition also referenced his right to due course of law under the Texas Constitution. But Starkey did not mention this right in his motion for summary judgment, nor does he raise it on appeal.

4

Starkey appeals.

## II. Discussion

Starkey contends that the trial court erred by denying his mandamus petition because, under the PIA, he has both a public right of access and a special right of access to the confidential information he requested. He further asserts that the trial court should have required the DAO to disclose the information under the discretionary disclosure procedures that accompany the applicable PIA exception in Section 261.201 of the Family Code. According to Starkey, interpreting the PIA otherwise would violate his right to due process, forcing him to file a 42 U.S.C. § 1983 action to secure the documents on federal constitutional grounds.[7]

### A. Governing Law

Starkey's appeal centers on the PIA and the PIA exception in Family Code Section 261.201, which the DAO relied upon in withholding his requested documents.

#### 1. Public Information Act

Because "government is the servant and not the master of the people, it is the policy of this state that each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government." Tex. Gov't

---

[7]*See* 42 U.S.C. § 1983 ("Every person who, under color of [law] . . . subjects . . . any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .").

Code Ann. § 552.001(a); *see Jackson v. State Off. of Admin. Hearings*, 351 S.W.3d 290, 293 (Tex. 2011). To that end, the PIA provides a general right to access public information held by a governmental entity, Tex. Gov't Code Ann. § 552.021, but "[i]nformation is excepted from the [general disclosure] requirements of Section 552.021 if it is information considered to be confidential by law, either constitutional, statutory, or by judicial decision." *Id.* § 552.101. An individual has a "special right of access to confidential information," though, if the confidential information sought "relates to the person and . . . is protected from public disclosure by laws intended to protect that person's privacy interests." *Id.* § 552.023(a) (capitalization altered).

If a governmental entity receives a request for information under the PIA and believes that the information is confidential or otherwise excepted from disclosure, it must seek an AG opinion within ten business days.[8] *Id.* § 552.301(a), (b). If it fails to timely request an AG opinion, "the information requested in writing is presumed to be subject to required public disclosure and must be released unless there is a compelling reason to withhold the information." *Id.* § 552.302.

---

[8]The governmental entity need not seek an AG opinion if there has "been a previous [AG] determination about whether the information falls within one of the [relevant] exceptions." Tex. Gov't Code Ann. § 552.301(a).

6

## 2. Family Code Section 261.201

The AG and DAO concluded that Family Code Section 261.201 was a "compelling reason" to withhold Starkey's requested information.[9] Tex. Att'y Gen. OR2020-21453; *see* Tex. Gov't Code Ann. § 552.302. That Section—specifically, Subsection (a)—classifies as "confidential" certain information related to the report or investigation of child abuse or neglect:

> (1) a report of alleged or suspected abuse or neglect made under [Family Code Chapter 261] and the identity of the person making the report; and

> (2) except as otherwise provided in [Section 261.201], the files, reports, records, communications, audiotapes, videotapes, and working papers used or developed in an investigation under [Chapter 261] or in providing services as a result of an investigation.

Tex. Fam. Code Ann. § 261.201(a). But even if information is confidential under Subsection (a) of 261.201, Subsections (b) and (c) of that same statute permit the trial court to order that the confidential information be disclosed after notice and a hearing. *See id.* § 261.201(b), (c).

Subsection (b) of 261.201 authorizes a trial court to order disclosure of confidential abuse-or-neglect information if (1) a party files a motion seeking the release

---

[9]Family Code Section 261.201 was the only confidentiality provision mentioned in the DAO's letter requesting an AG opinion, it was the only confidentiality provision relied upon in the AG's corresponding opinion, Tex. Att'y Gen. OR2020-21453, and it was the only confidentiality provision referenced in the DAO's letter to Starkey withholding the documents. Although the DAO attempted to assert other disclosure exceptions at the trial court level, and although it attempts to assert other disclosure exceptions on appeal, the DAO was prohibited from raising new exceptions unless they were "based on a requirement of federal law" or "involv[ed] the property or privacy interests of another person." Tex. Gov't Code Ann. § 552.326.

of the information, (2) notice of a hearing is served on the investigating agency and all interested parties, (3) the court conducts a hearing on the requested disclosure, (4) the court conducts an in camera review of the information, and (5) the court finds that disclosure is "essential to the administration of justice" and "not likely to endanger the life or safety" of the child who is the subject of the report, the person who made the report, or any other person who participated in the investigation or provides care for the child. *Id.* § 261.201(b). Subsection (c) grants similar discretionary authority, but it does not require a motion seeking the release of the information to initiate the procedure. *Id.* § 261.201(c) (omitting mention of in camera inspection as well). Instead, the trial court can initiate the disclosure procedure on its own motion, as long as it renders its ultimate order at the disclosure hearing and either reduces that order to writing or issues it on the record in open court. *Id.*

### 3. Standard of Review[10]

Whether information that is requested under the PIA is excepted from disclosure is essentially a matter of statutory construction. *City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 357 (Tex. 2000) (plurality op.); *Doe v. Tarrant Cnty. Dist. Att'y's Off.*, 269 S.W.3d 147, 152 (Tex. App.—Fort Worth 2008, no pet.); *see Greater Hous. P'ship*, 468

---

[10]Generally, when reviewing an appeal from a mandamus action initiated in the trial court, we review the trial court's judgment using the same appellate standards applicable to other civil actions. *Simmons*, 166 S.W.3d at 345–46. Here, the facts material to this appeal are undisputed, and the questions presented are matters of law.

S.W.3d at 58. And matters of statutory construction are questions of law that we review de novo. *Paxton v. City of Dallas*, 509 S.W.3d 247, 256 (Tex. 2017) (construing PIA's "compelling reason" standard de novo); *Doe*, 269 S.W.3d at 152.

In construing the PIA and its exceptions, "our primary objective is to ascertain and give effect to the [l]egislature's intent." *Greater Hous. P'ship*, 468 S.W.3d at 58. We presume that the legislature intended for the statute to be constitutional, and we presume that the statute is in fact constitutional and interpret it accordingly. *See City of Pasadena v. Smith*, 292 S.W.3d 14, 19 & n.36 (Tex. 2009); *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 169–70 (Tex. 2004); *Davis v. Tex. Dep't of Pub. Safety*, No. 03-13-00199-CV, 2014 WL 4058981, at *1 (Tex. App.—Austin Aug. 12, 2014, pet. denied) (mem. op.). "[W]e give due consideration to AG decisions even though they are not binding" because "the legislature has imposed on the AG the duty to provide written opinions to governmental entities" on such issues. *Doe*, 269 S.W.3d at 152.

## B. Starkey's PIA Claims

First, Starkey claims that, under the PIA, he is entitled to the documents he requested—the "records and documents that were gathered regarding the investigation of [Starkey's aggravated sexual assault of a child] case." Starkey does not dispute that this investigative information is confidential under Family Code Section 261.201(a),[11]

---

[11]A single sentence in Starkey's brief alludes to the fact that he is not seeking "public release" of the requested information. To the extent that he intends to challenge the applicability of Texas Family Code Section 261.201(a) based on the "subject to public release" portion of that statute, he has waived the issue by failing to

nor does he dispute that Section 261.201 is sufficiently "compelling" to overcome the presumption favoring public disclosure of such records. *See* Tex. Fam. Code Ann. § 261.201(a); Tex. Gov't Code Ann. § 552.302. Nonetheless, he asserts a right to this information "under both [S]ection 552.021 (the 'general public' [PIA] provision) and [S]ection 552.023 (the 'beyond the right of the general public' provision)." *See* Tex. Gov't Code Ann. §§ 552.021, .023. And whichever right of access applies, Starkey further argues that the trial court should have ordered disclosure under the discretionary disclosure procedures that accompany the relevant PIA exception in Family Code Section 261.201. *See* Tex. Fam. Code Ann. § 261.201(b), (c).

### 1. No Public Right of Access

It is unclear why Starkey thinks he is entitled to the information under what he calls the "general public provision" of the PIA. *See* Tex. Gov't Code Ann. § 552.021.

Starkey himself acknowledges that the general public's right to access public information does not extend to "information considered to be confidential by law, either constitutional, statutory, or by judicial decision." *Id.* § 552.101. And, as we have already noted, Starkey does not appear to dispute that the investigative information he

---

raise it below. Tex. R. App. P. 33.1(a). Even if he had preserved the issue, though, we do not interpret the "not subject to public release" phrase within Section 261.201(a) as a description of the requestor's intended use of the information. The phrase itself specifies that the "public release" Section 261.201(a) prohibits is that which would otherwise occur "under Chapter 552, Government Code," i.e., the PIA. Tex. Fam. Code Ann. § 261.201(a).

requested is "confidential" under Family Code Section 261.201(a). Section 261.201(a) expressly states that such confidential investigative information is "not subject to public release under Chapter 552, Government Code," i.e., the PIA. Tex. Fam. Code Ann. § 261.201(a). Therefore, Starkey is not entitled to this information under the "general public provision." *See* Tex. Gov't Code Ann. § 552.021.

## 2. No "Special Right of Access"

Starkey also argues that he is entitled to the requested investigative information because he has a "special right of access" to the confidential information as a person to whom the confidential information relates. *Id.* § 552.023(a). He has no such right.

The PIA provides a requestor with a "special right of access to confidential information" only if it is information "that relates to the person and that is protected from public disclosure by laws intended to protect that person's privacy interests." *Id.* (capitalization altered); *see also id.* § 552.023(b) (authorizing a governmental entity to withhold information from one with a special right of access based on "other provisions of this chapter or other law[s] that are not intended to protect the person's privacy interests"). Here, there is no disputing that the information Starkey requested "relates to [him]." *Id.* § 552.023(a). But the relevant law prohibiting public disclosure of this information—Section 261.201 of the Texas Family Code—is not "intended to protect [Starkey's] privacy interests." *Id.*

To determine the privacy interests protected by Section 261.201, we look at the plain language of the text "in light of the statute as a whole." *Silguero v. CSL Plasma,*

11

*Inc.*, 579 S.W.3d 53, 59 (Tex. 2019); *see TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74–75 (Tex. 2016) (noting that when a statute is unambiguous, it must be construed according to its plain language without extrinsic aids). "As always, our mandate is to ascertain and give effect to the [l]egislature's intent as expressed in the statutory language." *Paxton*, 509 S.W.3d at 256–57 (reiterating that "a statute's unambiguous language controls the outcome"); *see also Davis v. Morath*, 624 S.W.3d 215, 222 (Tex. 2021) ("We must apply statutes as written and refrain from rewriting text that lawmakers chose." (quoting *Pruski v. Garcia*, 594 S.W.3d 322, 325 (Tex. 2020))).

Examining the language of Section 261.201 as a whole, *see Silguero*, 579 S.W.3d at 59, the legislature demonstrated an intent to protect the privacy of three categories of people: (1) "the person making the report," (2) the "child who is the subject of the report," and (3) "any other person whose life or safety may be endangered by the disclosure." Tex. Fam. Code Ann. § 261.201(a)(1), (b)(3)(B), (c)(2), (g), (j), (l); *see id.* § 261.201(b-1), (d).

The privacy of the person making the report of child abuse or neglect is the primary interest protected by this statute. The reporting party is the *only* person expressly categorized as confidential up front in Subsection (a) of 261.201: "[T]he following information is confidential . . . : a report of alleged or suspected abuse or neglect made under this chapter *and the identity of the person making the report.*" *Id.* § 261.201(a)(1) (emphasis added). While numerous other vulnerable individuals are involved in a confidential report or investigation of child abuse or neglect—not the

12

least of whom is the child allegedly being abused or neglected—the plain language of Subsection (a)'s confidentiality rule shows that the legislature primarily emphasized the protection of the privacy interests of the person making the report.

This legislative intent is confirmed in other subsections within Section 261.201 as well. Although these other provisions create exceptions to the general confidentiality rule by permitting the limited disclosure of abuse-or-neglect information, many of the listed disclosure exceptions still require redaction of the reporting person's identity. For example, Subsection (b-1) of 261.201 authorizes an administrative law judge to order the Department of Family and Protective Services to release confidential abuse-or-neglect information in certain circumstances, but "[b]efore the [D]epartment may release information under this [S]ubsection, the [D]epartment must edit the information to protect the confidentiality of the identity of any person who makes a report of abuse or neglect." *Id.* § 261.201(b-1). The same is true if, under Subsection (g) of 261.201, the Department discloses confidential abuse-or-neglect information to "the parent, managing conservator, or other legal representative of a child." *Id.* § 261.201(g). Likewise, a redaction must occur before an investigating agency provides the confidential records for inspection or duplication by "a child or a parent, managing conservator, or other legal representative of a child" under Subsection (k). *Id.* § 261.201(k), (l). Even if the child, once grown, seeks to access records related to his or her own abuse or neglect, "[t]he [D]epartment may edit the documents to protect the identity of . . . [a] person whose identity is confidential," *id.* § 261.201(d), which, as

13

Subsection (a) emphasizes, includes the identity of the "person making the report." *Id.* § 261.201(a)(1). By expressly making confidential the reporting person's identity, and by continuing to protect that person through carve-outs from disclosure exceptions, the legislature demonstrated a clear intent to protect the reporting party's privacy interests.

Section 261.201 demonstrates a legislative intent to protect two other categories of persons as well: the "child who is the subject of the report of alleged or suspected abuse or neglect" and "other person[s] whose li[v]e[s] or safety may be endangered by the disclosure." *Id.* § 261.201(b)(3)(B), (c)(2)(B), (j). Though these individuals are not protected to the same extent as is the reporting party, their interests are nonetheless shielded throughout Section 261.201. Again, the subsections of 261.201 permitting limited disclosure of confidential abuse-or-neglect information—but only after redacting or protecting the identity of certain individuals—are telling in this regard.

For example, under Subsection (i) of 261.201, if the Texas Juvenile Justice Department releases a report of abuse or neglect committed against a child in that agency's care, the legislature requires it to redact the report "to protect the identity of: (1) a child who is the subject of the report of alleged or suspected abuse or neglect; (2) the person who made the report; and (3) any other person whose life or safety may be endangered by the disclosure." *Id.* § 261.201(i), (j). These same interests are protected if a trial court orders disclosure under the discretionary procedures in Subsection (b) or (c), as Starkey contends the trial court should have done in this case.

14

*Id.* § 261.201(b), (c). Before a trial court can order disclosure under Subsection (b) or (c), it must first find that the disclosure is "not likely to endanger the life or safety of . . . [the] child who is the subject of the report," "[the] person who makes [the] report," or "any other person who participates in [the] investigation of reported abuse or neglect or who provides care for the child." *Id.* § 261.201(b)(3)(B), (c)(2)(B); *see also id.* § 261.201(g) (requiring the Department to redact not only "the identity of the person who made the report" but also the identity of "any other person whose life or safety may be endangered by the disclosure" before providing confidential abuse-or-neglect information to "the parent, managing conservator, or other legal representative of a child"). Section 261.201 is thus primarily intended to protect the privacy interests of (1) the "person making the report"; (2) the "child who is the subject of the report"; and (3) "other person[s] whose li[v]e[s] or safety may be endangered by the disclosure." *Id.* § 261.201(a)(1), (b)(3)(B), (c)(2)(B), (g), (j), (l); *see id.* § 261.201(b-1), (d).

One category of people Section 261.201 is clearly *not* intended to protect, though, is the alleged perpetrators of abuse or neglect. Indeed, even when an alleged perpetrator is the child's parent and would otherwise be entitled to confidential abuse-or-neglect information, Section 261.201 clarifies that such information cannot be disclosed: "The investigating agency *shall* withhold information under this subsection if the parent, managing conservator, or other legal representative of the child requesting the information is alleged to have committed the abuse or neglect." *Id.* § 261.201(k) (emphasis added).

15

Starkey falls into this latter category. *See Starkey*, 2019 WL 3819505, at *1 (noting Starkey's status as the victim's adoptive father).[12] He does not claim to be "the person [who] ma[de] the report," the "child who is the subject of the report," or another "person whose life or safety may be endangered by the disclosure." *See* Tex. Fam. Code Ann. § 261.201(a)(1), (b)(3)(B), (c)(2)(B), (g), (j), (l). Rather, in his mandamus petition, Starkey contended that he was "a person who has been convicted of child abuse or child neglect" and he sought "access to the very information upon which that conviction [wa]s based." Because Section 261.201 is not "intended to protect that person's privacy interests," Starkey does not have a "special right of access" to the information that this statute makes confidential. Tex. Gov't Code Ann. § 552.023(a); *see* Tex. Fam. Code Ann. § 261.201.

### 3. No Right of Access Under Family Code Section 261.201[13]

Starkey next argues that, whether or not he had a special right of access, "[t]he mandamus proceeding filed by [him] in the trial court act[ed] as a motion requesting release of the information under [S]ection 261.201(b)(1)," and "the trial court could have moved for release on its own [motion] under [Family Code S]ection 261.201(c)."

---

[12]Starkey divorced his victim's mother, but there is no indication in the record that his parental rights to the child were ever terminated. *See Starkey*, 2019 WL 3819505, at *1.

[13]Starkey did not reference his Family Code argument in his "Issues Presented"; Starkey's listed issues relate to the PIA and due process.

It is unclear if Starkey interprets these procedures as grounds for disclosure under the PIA or as grounds for disclosure separate and apart from the PIA.

Either way, a trial court's authority to order the release of confidential information under Subsection (b) or (c) is discretionary. *S.C.S. v. Tex. Dep't of Fam. & Protective Servs*, Nos. 2-09-341-CV, 2-09-343-CV, 2010 WL 2889664, at *2 (Tex. App.—Fort Worth July 22, 2010, no pet.) (mem. op.) (recognizing that "[t]he exception allowing the trial court to disclose confidential information under [S]ection 261.201[(b)] is discretionary"); *In re Fulgium*, 150 S.W.3d 252, 255 (Tex. App.—Texarkana 2004, orig. proceeding) (similar). The trial court "may" order disclosure—it has "permission or a power" to do so—but it is not required to do so. Tex. Gov't Code Ann. § 311.016(1) (stating that "'[m]ay' creates discretionary authority"); *see S.C.S.*, 2010 WL 2889664, at *2 ("The word 'may' creates discretionary authority.").

Starkey has not demonstrated that the trial court abused its discretion by declining to order disclosure. The trial court had no obligation to act on its own motion under Subsection (c). *See* Tex. Fam. Code Ann. § 261.201(c). And even if we construe Starkey's mandamus petition as a motion seeking release of the investigative information under Subsection (b),[14] Starkey has not demonstrated that the other statutory prerequisites to disclosure were satisfied. *See id.* § 261.201(b). For example,

---

[14]Starkey's mandamus petition never mentioned the discretionary procedures in Section 261.201(b) and (c).

there is nothing in the record showing that Starkey requested the required hearing, there is nothing showing that he served notice of the hearing on the investigating agency and interested parties, and there is nothing showing that he proved disclosure to be "essential to the administration of justice" and "not likely to endanger the life or safety" of the child, reporting party, or other relevant persons.[15] *See id.*; *see also Brown v. City of Austin*, No. 03-19-00035-CV, 2019 WL 4068559, at *3 (Tex. App.—Austin Aug. 29, 2019, no pet.) (mem. op.) (rejecting similar argument where "the record d[id] not show that [Appellant] filed any [Subsection (b)] motion, served the requisite notice on all interested parties, or requested that the trial court review the reports in camera"). Given that these were prerequisites to the trial court's discretionary authority to order disclosure under Subsection (b), Starkey has not demonstrated that the trial court abused that discretion. *See* Tex. Fam. Code Ann. § 261.201(b); *see also Fulgium*, 150 S.W.3d at 255–56 (holding trial court did not abuse its discretion by failing to order disclosure where trial court held hearing but there was no showing of the necessity or risk of disclosure, among other things).[16]

---

[15]In his motion for summary judgment, Starkey claimed that he had satisfied the statutory prerequisites for Subsections (b) and (c) because his mandamus petition served as a motion seeking the information, he had served all parties, and the "specific nature" of Starkey's PIA request provided the trial court with enough information to determine that disclosure was "essential to the administration of justice." *See* Tex. Fam. Code Ann. § 261.201(b), (c).

[16]Texas courts have recognized a similar rule in other contexts as well. Generally, when a party fails to follow the rules that govern its motion or request, the trial court does not abuse its discretion by denying that motion or request. *See, e.g., Villegas v.*

18

We overrule Starkey's PIA issue.

## C. Due Process

Finally, Starkey claims that if the PIA does not allow him to access the requested information, then the PIA violates his due process rights under *Skinner v. Switzer*, 562 U.S. 521, 131 S. Ct. 1289 (2011), and *Dist. Att'y's Off. for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 129 S. Ct. 2308 (2009), and he will have no choice but to pursue a § 1983 claim to protect these due process rights. *See* 42 U.S.C. § 1983. It is unclear if Starkey intends to raise a due process challenge in this court, or if he is simply warning us that such a claim is coming unless the PIA is interpreted to provide him access to the requested information. The State appears to construe Starkey's argument as a mere word of warning, because it does not respond to it.

To the extent that Starkey raises a due process challenge in this court, we reject it. The cases Starkey cites—*Osborne* and *Skinner*—do not provide a substantive due process right to postconviction relief, and other courts have rejected attempts to cloak

---

*Carter*, 711 S.W.2d 624, 626 (Tex. 1986) ("Generally, when movants fail to comply with Tex. R. Civ. P. 251's requirement that the motion for continuance be 'supported by affidavit,' we presume that the trial court did not abuse its discretion in denying the motion."); *In re Z.C.*, 280 S.W.3d 470, 478 (Tex. App.—Fort Worth 2009, pet. denied) (per curiam) (recognizing that, because the appellant's motion for continuance "did not comply with [R]ule 251 . . . the trial court was without discretion to grant it"); *cf. Rivera v. Coastal Bend Coll.*, No. 13-03-00180-CV, 2004 WL 1797573, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 12, 2004, pet. denied) (mem. op.) (holding that, "[b]ecause [the] appellant failed to fully comply with the [relevant statutory] requirements [regarding pro se inmate litigation] . . . the trial court did not abuse its discretion in dismissing [appellant's] suit without prejudice").

the PIA with constitutional procedural protections. Starkey has not shown that the narrow procedural rights recognized in *Osborne* are applicable to the PIA, much less violated by the PIA's procedures and confidentiality limitations.

### 1. *Osborne* and *Skinner*

In *Osborne* and *Skinner*, the United States Supreme Court addressed constitutional challenges to states' postconviction procedures.

*Osborne* examined the constitutionality of an Alaska statute that provided for postconviction access to newly discovered, material evidence. *See Osborne*, 557 U.S. at 64, 70–71, 129 S. Ct. at 2317, 2321. The prisoner in the case claimed he had a substantive due process right to access evidence for postconviction DNA testing. *Id.* at 72, 129 S. Ct. at 2322. The Supreme Court "reject[ed] the invitation" to extend substantive due process to this area and "conclude[d] . . . that there is no such substantive due process right."[17] *See id.* at 72–74, 129 S. Ct. at 2322–23. The Court recognized that, once a defendant has been proved guilty at a fair trial, he "has been constitutionally deprived of his liberty" and "does not have the same liberty interests as a free man." *Id.* at 68–69, 129 S. Ct. at 2320. States thus have "flexibility in deciding what procedures are needed in the context of postconviction relief," and if "'a [s]tate

---

[17]The *Osborne* Court noted that establishing such "a freestanding right . . . would force us to act as policymakers, and our substantive-due-process rulemaking authority would not only have to cover the right of access but a myriad of other issues," such as postconviction preservation of forensic evidence. *Osborne*, 557 U.S. at 73–74, 129 S. Ct. at 2323.

*chooses* to offer help to those seeking relief from convictions,' due process does not 'dictat[e] the exact form such assistance must assume.'" *Id.* at 69, 129 S. Ct. at 2320 (emphasis added) (quoting *Pennsylvania v. Finley*, 481 U.S. 551, 559, 107 S. Ct. 1990, 1995 (1987) (discussing right to counsel in postconviction collateral attack)).

However, when a State does choose to provide a mechanism for postconviction assistance, that state-provided substantive right may "beget yet other rights to procedures essential to the realization of the parent right." *Id.* at 68, 129 S. Ct. at 2319. To determine whether a state's postconviction procedures satisfy procedural due process, "the question is whether consideration of [the prisoner's] claim within the framework of the State's procedures for postconviction relief 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.'" *Id.* at 69, 129 S. Ct. at 2320 (quoting *Medina v. California*, 505 U.S. 437, 446, 448, 112 S. Ct. 2572, 2577–78 (1992)).

As we explain below, Starkey has not demonstrated that *Osborne*'s procedural due process analysis is applicable to this case. But even if we assume that *Osborne* is applicable, *Skinner* is not. *Skinner* "stands for the limited proposition that a convicted state prisoner may seek postconviction DNA testing in federal court through a [§] 1983 claim, not only through a habeas petition."[18] *Reger v. State*, No. 02-12-00178-CR, 2014

---

[18]In *Skinner*, the trial court dismissed Skinner's *Osborne* challenge because Skinner had filed it under § 1983 rather than as a petition for writ of habeas corpus, but the

WL 4656632, at *5 (Tex. App.—Fort Worth Sept. 18, 2014, pet. ref'd) (mem. op., not designated for publication); *see Skinner*, 562 U.S. at 525, 534–35, 131 S. Ct. at 1293, 1298–99. In reaching this conclusion, the *Skinner* Court reiterated that *Osborne* "rejected the extension of substantive due process to [the postconviction DNA] area, and left slim room for the prisoner to show that the governing state law denies him procedural due process." *Skinner*, 562 U.S. at 525, 131 S. Ct. at 1293 (internal citations omitted). *Skinner* did not change or expand the "slim" due process rights recognized in *Osborne*; it does not help Starkey's case.

### 2. No Substantive Due Process Right

As *Osborne* concluded, and as *Skinner* reiterated, Starkey has no free-standing, postconviction, substantive due process right to confidential documents in the State's possession. *Cf. Ramirez v. State*, 621 S.W.3d 711, 717 (Tex. Crim. App. 2021) (recognizing that "[t]here is no free-standing [substantive] due-process right to DNA testing" (quoting *Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011))); *Gutierrez*, 337 S.W.3d at 889 (citing *Osborne*). "[S]tates are under no obligation to provide mechanisms for postconviction relief." *Emerson v. Thaler*, 544 Fed. App'x 325, 327 (5th Cir. 2013) (per curiam); *see Ex parte Mines*, 26 S.W.3d 910, 914 (Tex. Crim. App. 2000) (orig. proceeding) (recognizing in pre-*Osborne* case that "a state is not required to

_____

Supreme Court held that an *Osborne* challenge could be brought via a § 1983 action. *Skinner*, 562 U.S. at 525, 529–30, 534, 131 S. Ct. at 1293, 1295–96, 1298–99 (holding § 1983 action could not be rejected on motion to dismiss).

provide a post-conviction remedy"). Starkey cannot maintain a substantive due process challenge to the PIA under *Osborne* or *Skinner*.

### 3. No Identified State-Created Right Subject to *Osborne*

More to the point, Starkey has not shown that *Osborne*'s procedural due process analysis is applicable to the PIA at all; he has not demonstrated that the PIA provides him with a state-created, postconviction, substantive right that is entitled to federal constitutional protection.

The statute at issue in *Osborne* was specifically intended to benefit prisoners and other convicted criminals by providing postconviction access to newly discovered, material, potentially exonerating evidence. *See Osborne*, 557 U.S. at 64, 129 S. Ct. at 2317 (discussing Alaska's statute). The PIA, in contrast, was intended for the benefit of the general public of Texas by providing them with "information about the affairs of government . . . . so that they may retain control over the instruments they have created." Tex. Gov't Code Ann. § 552.001(a); *Paxton*, 509 S.W.3d at 249. It was not intended to serve as a mechanism for postconviction relief.

But Starkey argues that the PIA is "the only means of accessing the information [he] seeks,"[19] and he claims that "[t]he PIA is important in postconviction habeas

---

[19]We are not persuaded that the PIA is the only way of accessing the information Starkey seeks. *See, e.g.*, Tex. Code Crim. Proc. Ann. art. 11.07, § 3(d) (providing that if "there are controverted, previously unresolved facts which are material to the legality of the applicant's confinement, . . . . the court may order affidavits, depositions, interrogatories, additional forensic testing, and hearings"). Instead, Starkey's characterization of the PIA as "the only means of acces[s]" merely begs the question:

23

situations because . . . when States do not allow convicted prisoners postconviction access to information relevant to habeas review, the States violate the prisoners' due process rights." Starkey's off-label use of the PIA for pre-habeas discovery, though, does not change what the PIA is. Any postconviction, pre-habeas benefits the PIA provides to prisoners are entirely incidental.

In fact, prisoners' statutory PIA rights are more limited than those of the general public. *See* Tex. Gov't Code Ann. § 552.028(a). While a governmental entity is required

Did Starkey not receive the material portions of his requested information during the trial of his criminal case? *See Scibek v. State*, No. 02-10-00013-CR, 2010 WL 5186774, at *2–3 (Tex. App.—Fort Worth Dec. 23, 2010, no pet.) (mem. op., not designated for publication) (reciting procedure for in camera review of confidential *Brady* information).

The information Starkey requested relates to the investigation of child abuse that resulted in his conviction, and the investigator he calls out by name in his PIA request—Investigator Pawley—testified at his trial. *See Starkey*, 2019 WL 3819505, at *6, *10. Thus, although we have not seen the requested information, it would seem to have existed at the time of Starkey's trial, and if it was exculpatory, it would presumably have been produced in discovery. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 55–61, 107 S. Ct. 989, 1000–03 (1987) (discussing constitutional right to the pretrial disclosure of material, confidential child-abuse information). There is no indication that Starkey was deprived of any *Brady* material at his trial. Starkey did not mention the investigation-related information in his direct appeal from his conviction. *See Starkey*, 2019 WL 3819505, at *1. Even now, Starkey does not allege that the requested investigative information was wrongly withheld pretrial. To the extent that Starkey "has forgone an avenue that would have afforded the very material and opportunity he seeks now . . . he cannot later attempt to assert a constitutional right to that opportunity on his own terms." *Nabelek v. Bradford*, 228 S.W.3d 715, 718–19 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (noting that prisoner could have received the requested information during trial but forfeited the opportunity); *cf. Osborne*, 557 U.S. at 85, 129 S. Ct. at 2329 (Alito, J., concurring) (commenting that when a defendant foregoes DNA testing at trial, he cannot demand it after trial as "such a right would allow defendants to play games with the criminal justice system").

to comply with a PIA request from a member of the general public, it has the discretion to refuse or effectively ignore a PIA request from a prisoner, and it must only comply if the prisoner's attorney sends the PIA request.[20] *Id.*

This across-the-board limitation on pro se prisoners' PIA rights is much broader than the confidentiality exceptions Starkey challenges. *Compare id.* (applying to all PIA requests from pro se prisoners), *with id.*§ 552.101 (excepting confidential information from disclosure), *and* Tex. Fam. Code Ann. § 261.201(a) (excepting specific categories of child-abuse information from disclosure). Yet several of our sister courts have rejected due process challenges to this across-the-board limitation, holding that a prisoner "has no constitutionally protected right to [PIA] information as a matter of due process." *Nabelek*, 228 S.W.3d at 718 (rejecting argument that prisoner's inability to access documents under PIA hindered his right to petition for writ of habeas corpus and violated his due process rights);[21] *see Davis*, 2014 WL 4058981, at *2 (quoting *Nabelek* and stating that "courts that have considered the constitutionality of [S]ection 552.028, including this Court, have concluded that an incarcerated individual 'has no constitutionally protected right to [information sought under the PIA] as a matter of

---

[20]Starkey submitted his PIA request through his attorney, so the government was not excused from PIA compliance. *See* Tex. Gov't Code Ann. § 552.028(a)(2).

[21]*See also In re Bonilla*, 424 S.W.3d 528, 533 n.3 (Tex. Crim. App. 2014) (orig. proceeding) (distinguishing *Nabelek* but not disagreeing with its due process analysis).

due process'"); *Trevino v. State*, No. 03-12-00060-CV, 2013 WL 4056193, at *5–6 (Tex. App.—Austin Aug. 7, 2013, no pet.) (mem. op.) (discussing and following *Nabelek*).

The Fifth Circuit Court of Appeals has held similarly, stating with even greater clarity that a prisoner "has no federally-protected right to receive copies of state records." *Fields v. Gage*, 550 Fed. App'x 240, 241 (5th Cir. 2013) (per curiam) (mem. op.) (summarily rejecting due process challenge to across-the-board limitation on pro se prisoners' PIA requests); *see Wright v. Curry*, 122 Fed. App'x 724, 725 (5th Cir. 2004) (holding prisoner seeking criminal court records and transcripts under PIA "d[id] not have a federally-protected right to a free copy of his . . . court records merely to search for possible error in order to file a petition for collateral relief at some future date"). That court went further still. In *Wright*, the Fifth Circuit not only held that the prisoner lacked "a federally-protected right" to the criminal court records he had requested under the PIA but also dismissed the prisoner's appeal as frivolous and "without arguable merit." 122 Fed. App'x at 725–26.

Starkey has not discussed or distinguished any of this case law. Nor has he cited any other case law showing that Texas's PIA endows him with a substantive, postconviction right that entitles him to confidential governmental-held documents related to his criminal case—a right sufficient to "beget" the procedural due process protections enunciated in *Osborne*.[22] *See Osborne*, 557 U.S. at 68, 129 S. Ct. at 2319; *cf.*

---

[22]*Cf. Violett v. Cohron*, No. 16-5484, 2017 WL 8236191, at *2 (6th Cir. Jan. 4, 2017) (order) (implying that *Osborne* could apply to state open records law but declining to

*Nabelek*, 228 S.W.3d at 718 (holding prisoner had no right to documents requested under PIA because "[t]he information and items he s[ought] [we]re not his, they [we]re the property and in the custody of the City").

### 4. **Regardless, No** *Osborne* **Violation**

Finally, even if we assume that the PIA creates a right to disclosure that is subject to *Osborne*'s postconviction procedural due process analysis, Starkey's due process challenge would still fail because he has not shown that Texas's state-provided postconviction procedures "are fundamentally inadequate to vindicate the substantive rights provided."[23]  *Osborne*, 557 U.S. at 69, 129 S. Ct. at 2320; *see Pruett v. Choate*, 711 Fed. App'x 203, 206 (5th Cir. 2017).

The PIA's "fundamental purpose is to mandate the maximum disclosure of public information."  *City of Dallas v. Abbott*, 304 S.W.3d 380, 384 (Tex. 2010); *see* Tex. Gov't Code Ann. § 552.001(a).  But "it was also designed to simultaneously protect the personal privacy of individuals," *City of Dallas*, 304 S.W.3d at 384 (internal quotation

conduct *Osborne* analysis because prisoner had not availed himself of state law); *Taylor v. Abrams*, No. GJH-16-2738, 2016 WL 4883100, at *3 (D. Md. Sept. 13, 2016) (mem. op.) (conducting brief *Osborne* analysis of group of Maryland statutes including state public information act and rejecting due process challenge).

[23]Starkey does not clarify whether he considers the PIA unconstitutional on its face or unconstitutional as applied to him.  *Osborne* analyzed the facial constitutionality of the challenged statute, though, and Starkey heavily relies on *Osborne*.  *See* 557 U.S. at 71, 129 S. Ct. at 2321 (affirming facial constitutionality of Alaska statute and noting that Osborne had not tried the state-law procedures so he could not complain of arbitrary application).

marks omitted), recognizing "that public interests are best advanced by shielding some information from public disclosure," *Paxton*, 509 S.W.3d at 249–50.

Section 261.201 of the Family Code reflects a legislative policy judgment that the public interests are best advanced by shielding information related to child-abuse reports and investigations. *See* Tex. Fam. Code Ann. § 261.201(a). Indeed, "the State has a compelling interest in keeping child abuse information confidential so that reluctant victims, relatives, and witnesses will be encouraged to come forward and report the abuse without the fear of general disclosure." *Scibek*, 2010 WL 5186774, at *3 (discussing information in *Brady* context and quoting *Dixon v. State*, 923 S.W.2d 161, 167 (Tex. App.—Fort Worth 1996) (op. on reh'g), *vacated on other grounds*, 928 S.W.2d 564 (Tex. Crim. App. 1996)); *see S.C.S.*, 2010 WL 2889664, at *3 (recognizing that "[c]onfidentiality is central to the [F]amily [C]ode provisions governing the reporting of child abuse"); *Doe*, 269 S.W.3d at 155 (same). "[T]he public interest in protecting this type of sensitive information is strong"; the information is not subject to release to the general public, much less to prisoners convicted of perpetrating the relevant abuse. *Ritchie*, 480 U.S. at 57, 107 S. Ct. at 1001 (discussing similar Pennsylvania statute); *see* Tex. Fam. Code Ann. § 261.201(k) (providing that an investigating agency "shall" withhold information if the requestor "is alleged to have committed the abuse or neglect").

This is consistent with the "traditions and conscience" of our society. *See Osborne*, 557 U.S. at 70, 129 S. Ct. at 2320–21 (noting that Alaska's constitutionally sound

"procedures [we]re similar to those provided for DNA evidence by federal law and the law of other States"). Texas is far from the only jurisdiction that aims to protect children—particularly victimized children—by encouraging citizens to report incidents of child abuse and by shielding any corresponding reports or investigations from public disclosure. *See., e.g.*, Alaska Stat. Ann. § 47.17.040(b) (West 2021) (shielding child protection "[i]nvestigation reports and reports of harm" from public disclosure); Fla. Stat. Ann. § 39.202(1) (West 2021) (exempting from public disclosure agency "reports of child abandonment, abuse, or neglect"); Okla. Stat. Ann. tit. 10A, §§ 1-6-102(a), 1-6-107(A) (West 2021) (categorizing as confidential reports of child abuse or neglect); *Ritchie*, 480 U.S. at 43 & n.2, 107 S. Ct. at 994 & n.2 (discussing Pennsylvania statute that provided "all reports and other information obtained in the course of a [child protective agency] investigation must be kept confidential").

Starkey has not explained how Texas's protection of sensitive, confidential information related to victimized children violates "the traditions and conscience of our people" or renders the PIA fundamentally inadequate to fulfill its open-government, public-interest purposes. *See Osborne*, 557 U.S. at 69, 129 S. Ct. at 2320.

We overrule Starkey's due process issue.

### III. Conclusion

Starkey has not demonstrated that he is entitled to the confidential information he requested under the PIA, nor has he demonstrated a violation of his right to due process.  Accordingly, we affirm the trial court's judgment.


/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice


Delivered:  March 24, 2022